STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. VINCENZO BOVINO, PLAINTIFF IN ERROR.

Submitted July 10, 1916—Decided November 20, 1916.

1. Where a dying declaration is offered in evidence, the preliminary question of fact whether the declarant was under a sense of impending death is for the determination of the trial court; but when the declaration has been admitted, the questions of fact as to what the declarant said and what his mental and physical condition were at the time are for the jury.
2. A witness may be contradicted or impeached by testimony previously given by him before the grand jury. The case of *Imlay* v. *Rogers*, 7 *N. J. L.* 347, overruled.
3. Where a witness has volunteered testimony inimical to the party that called him, contrary statements by the witness made elsewhere may be shown, not for the purpose of impeaching the witness, but for the purpose of neutralizing the effect of his testimony.

---

On error to the Essex Oyer and Terminer.

For the plaintiff in error, *McDermit & McDermit*.

For the defendant in error, *Frederick F. Guild* and *Andrew Van Blarcom*.

The opinion of the court was delivered by

GARRISON, J.    The plaintiff in error, Vincenzo Bovino, commonly known as Jimmy Bennett, was indicted for the

murder of Frank Miserentino, commonly known as Frank Baker, who, on the night of April 21st, 1914, was shot and killed in a dance hall in the city of Newark.

The affirmative defence of the accused was an alibi. At the trial, witnesses for the state testified that a few moments before his death, Baker, in answer to the question, "Who shot you?" said, "Jimmy Bennett," which was admitted in evidence as a dying declaration.

The argument of counsel in support of the contention that it was error to admit this declaration is partly addressed to the admissibility of the testimony and partly to its credibility or force. With respect to the admissibility of proof as to a dying declaration, the rule stated by this court in the case of *State* v. *Monich*, 74 *N. J. L.* 522, is as follows: "Where a dying declaration is offered in evidence, the preliminary question of fact whether the declarant was under a sense of impending death is for the determination of the trial court, and its finding, if supported by any legal evidence, is not reviewable by ordinary writ of error."

State *v.* Monich was here on a strict writ of error, the present case is under the one hundred and thirty-sixth section of the Criminal Procedure act as well. Whether the scope of review is thereby broadened need not be decided since the judicial action in the present case was correct under either method of review.

It is true that the statement of Baker, "I am going to die," standing alone was not conclusive proof that he was under a sense of impending death; it might mean that or it might be the statement of a mere truism. The statement, however, did not stand alone, its concomitant circumstances showed, or so a court might find, in what sense the words were used. These circumstances were the persistent refusal of Baker, as long as he had hopes of living, to say who shot him; the sending at midnight for the officer at Baker's request; the reception of the last rites of the church; the fact that he was vomiting blood, and that in the opinion of those about him he was dying; and the fact that a few moments after making the declaration he was dead.

Not only was there legal testimony to support the finding that rendered the declaration of the deceased admissible, but such finding was amply justified by the weight of the testimony if this latter question be deemed to be before us. Having admitted the testimony as to what Baker said, the court properly left it to the jury to determine its truth and the weight to be accorded to it. This included not only the accuracy and truthfulness of the testimony as to what Baker said, but also Baker's bodily and mental condition at the time. This covers a number of assignments and specifications that were separately argued.

Counsel does not argue that the court left to the jury the question upon which the admissibility of the dying declaration depended, and for such an argument there would be no foundation in fact, hence the second point decided by State v. Monich is not involved. There was no error in the manner in which the offer of the dying declaration was dealt with by the trial court.

Anna Mae Gilling, a witness called by the state, having testified that she was in the dance hall at the time of the shooting, was asked to tell what happened. After answering this question in detail, she volunteered the statement, "but I did not see Jim Bennett in the hall at the time of the shooting." To enable the jury to determine what weight, if any, they should give to this irresponsive testimony, the clerk of the grand jury was sworn and testified that Anna Mae Gilling had testified before the grand jury that when she heard the shot she looked in that direction and saw Bennett standing at the saloon door, three or four feet away.

Counsel for plaintiff in error argues that upon grounds of public policy it was error to admit proof of testimony given before the grand jury, citing as an authority in this state *Imlay* v. *Rogers,* 7 *N. J. L.* 347. Upon a comprehensive examination of this question, Professor Wigmore reaches the conclusion that, "It is now universally conceded that a witness may be impeached in any subsequent trial, civil or criminal, by self-contradictory testimony given by him before the grand jury." *Wigm. Ev.* 2363.

In this conclusion of Professor Wigmore we concur, even as to the prophetic note in which he says, "The early doubt in New Jersey would to-day be repudiated. Imlay *v.* Rogers."

Imlay *v.* Rogers was a rule to show cause why a new trial should not be granted in a trespass case, tried in 1799, before Mr. Justice Kirkpatrick, who refused to admit a member of the grand jury to prove that a witness had sworn differently. On the question whether the rule should be made absolute, Chief Justice Kinsey and Justice Smith voted yes and Justices Kirkpatrick and Boudinot voted no. There was no opinion (the court being divided) and there is no way of knowing whether the justices who voted in the negative did so upon the proposition as to the grand jury or upon some other ground that properly enters into the question of granting a new trial. If the case is to be regarded as an authority for the proposition that the testimony of a witness before the grand jury cannot be put in evidence for purposes of contradiction and impeachment, it is against sound reasoning and the overwhelming weight of authority and must be regarded as definitely overruled.

The other ground of objection is that it was error "to permit the prosecutor to impeach his own witness." This is not an accurate statement of what the court permitted to be done, and as this matter was dealt with in the charge of Judge Martin with admirable clearness and precision, his language will be quoted as a correct statement of the situation and of the legal rule that was applied to it. He said, "The prosecutor called Mae Gilling, and she testified that she did not observe the defendant in the dance hall at the moment of the shooting. She made an oral statement under oath before the grand jury and a written statement that she saw the defendant at that time in the dance hall. The jury in this class of statements is permitted to consider as evidence only the testimony given here before it under oath. The statement elsewhere was not subject to cross-examination and the state cannot impeach its own witness. The statements made elsewhere were permitted to go in evidence merely for the purpose of tending to efface and neutralize the effect of the failure to

testify of the witness under oath here that defendant was present at the shooting. The statements of the witness made elsewhere should be entirely disregarded as in any way tending to prove the truth of the fact which it asserts, which in this instance is that the defendant was present at the shooting. The jury may, however, if it believes the statements made elsewhere are worthy of that effect, conclude that they withdraw from the case the evidence of that witness which it tends to discredit just the same as if that evidence had never been introduced, but beyond this the jury cannot give it any effect whatsoever. In other words, the jury may permit it to wipe the slate clean so that there is no evidence of that witness upon that subject before the jury." The action of the trial court was therefore within the principle, although not within the precise facts, of *State* v. *D'Adame,* 84 *N. J. L.* 386.

There was no error in the rulings as to this witness.

The same is true as to the witnesses, Susan Brown Clark, Mary Weber, Anna Gurlter and Dr. Edward Staehlin.

We have examined the other assignments and specifications without finding any error or any matter justifying special mention.

Finding no trial error in the record before us, the judgment of the Essex Oyer is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 15.

*For reversal*—None.